**FIDELITY UNION FIRE INS. CO. et al. v. CAIN et al.**

No. 10747.

Court of Civil Appeals of Texas. Dallas.

April 19, 1930.

Rehearing Denied May 31, 1930.

Collins & Houston, of Dallas, for appellants.

J. N. Townsend, Locke, Locke, Stroud & Randolph, all of Dallas, for appellees.

JONES, C. J.

Appellees, consisting of a number of individuals, filed a suit in a district court of Dallas county to foreclose a deed of trust lien on the property consisting of 53 feet on Commerce street and extending back 100 feet on Poydras street, making a lot 53x100 feet, with improvements thereon, and to establish and foreclose an alleged lien on a lot 53 feet on Main street, extending back 100 feet on Poydras street, making a lot 53x100 feet, both lots constituting a continuous tract 53x200 feet, bordered by Commerce, Poydras, and Main streets in the city of Dallas. Appellees were the several owners of bonds aggregating $130,000 and secured by a deed of trust lien on the lot facing Commerce street. The Boston Mutual Life Insurance Company was made defendant in this suit and alleged to be the owners of $28,000 of the series of bonds secured by the same deed of trust on the Commerce street lot, and will join with the other appellees for the same relief they are seeking. The bonds in suit constitute 158 of a series of 250 bonds executed by Western Company, a corporation, on March 30, 1912. These bonds were each of the face value of $1,000, maturing March 30, 1932, but contained a provision for accelerated maturity, if default should be made in the payment of interest. Such accelerated maturity was alleged and shown in this case. Allegations were made showing the existence of a statutory ground for a receiver, and the petition prayed for the immediate appointment of a receiver for all of the above-described property, and on final trial for a judgment for the amount of their bonds, together with a foreclosure of the deed of trust lien on the Commerce street lot, and to have a lien declared in their favor against the Main street lot, and for its foreclosure.

A preliminary hearing was had on the receivership application, with the result that a receiver was appointed to take charge of the entire property and his powers fixed in the judgment. Appellants did not resist the appointment of a receiver in so far as the Commerce street lot is concerned, but resisted the appointment of a receiver for the Main street lot, and filed appropriate pleadings, challenging the right to include the Main street property in the receivership, and has duly perfected an appeal from the receivership order in so far as it affects the Main street property.

Appellees rest their right to a receiver on the Main street property on a construction of the deeds of conveyance, under which appellants are holding the property. As we understand their pleading, there is no contention made that this right rests in any collateral agreement, either written or oral. The pleadings of the parties are sufficient to raise their respective contentions.

On March 30, 1912, the Western Company, a corporation, was the owner in fee-simple title of both the Main and Commerce street lots, with the improvements then located thereon. It is not disclosed what improve-

ments were on the Main street lot, but it is disclosed that a five-story building fronting on Commerce street, known as the Exline building, was located on the Commerce street lot. Prior to the conveyances to the Western Company, these lots had separate ownership, and such company acquired the two lots from the owners by their respective deeds. On March 30, 1912, the Western Company placed on the Commerce street lot a deed of trust lien to secure the payment of 250 bonds, of the par value of $1,000 each, executed by it on such date, the bonds maturing March 30, 1932. Appellees are the owners of 158 of these bonds. On the same date the Western Company placed a deed of trust on the Main street property, to secure the payment of 300 bonds, of the par value of $1,000 each, executed by it on such date, these bonds also maturing on March 30, 1932. These bonds were duly sold and are all outstanding. No owner of these latter bonds is a party to this suit, and no default that would accelerate their maturity has occurred. On April 1, 1912, the Western Company placed a third deed of trust, as a second lien, on both of these lots, to secure an issuance of 450 bonds of the par value of $1,000 each, executed by it on such date, these bonds maturing April 1, 1932. In each of these deeds of trust the land is conveyed to T. C. Camp, as trustee.

At the time this suit was filed, it appears by pleadings that only 32 of these bonds were unpaid and outstanding. Owners of twenty of this last issue of bonds were originally parties plaintiff to this suit and prayed for relief similar to that of appellees. While the suit was pending, and some time before the hearing on the application for a receiver, appellants took up and canceled these twenty bonds, paying to the owners their full value, so that at the time of the hearing for the receiver no plaintiff was the owner of any bond other than of the series of 250 bonds secured by a first lien on the Commerce street lot. At the time of such hearing there existed as a first lien on the Commerce street lot the said deed of trust lien to secure $250,000, the par value of the 250 bonds, and there existed as a first lien against the Main street property the said deed of trust lien to secure $300,000, the par value of said 300 bonds, and there existed a second lien on both pieces of property to secure $12,000, the par value of the remaining outstanding second lien bonds, making an aggregate incumbrance on both pieces of property in the sum of $562,000.

There was constructed on the two lots, presumably from the proceeds of these bonds, an office building fronting 53 feet on Main street and extending back to and fronting 53 feet on Commerce street and bordering 200 feet on Poydras street. That portion on the Main street lot is ten stories high and that portion on the Commerce street lot seven stories. There is no evidence as to when this building was constructed, other than that it was com-

pleted in 1914. The building is now known as the Fidelity Union Building. This building appears to have been constructed on the two lots as a unit, without any particular reference to the boundaries of either lot. It is serviced entirely from the Main street lot, and there is no entrance to the upper stories of that portion of the building on the Commerce street lot other than through the Main street entrance; each story having a hall running through from Main street to the end of the building. The entrance to the upper stories is by means of an elevator and a stairway, both located on the Main street lot, and the sewerage, heat, and light service all come from that portion of the building on the Main street lot.

On April 19, 1921, the Western Indemnity Company, a corporation, then owning this entire property, conveyed both lots and the improvements thereon by warranty deed to the Dallas Consolidated Abstract Company, a corporation. This conveyance was made subject to the existing liens. On June 1, 1925, the Dallas Consolidated Abstract Company conveyed an undivided one-half interest in this property to appellant the Fidelity Union Casualty Company, and on the same day conveyed the other one-half undivided interest to appellant Fidelity Union Fire Insurance Company. These conveyances contained covenants of warranty and are precisely the same in language, except as to the names of the grantee.

The deed of the Western Indemnity Company to the Consolidated Abstract Company contains the following clause: "That Western Indemnity Company, a corporation of the County of Dallas, State of Texas, for and in consideration of the sum of Ten Dollars, and other valuable considerations to it in hand paid by Dallas Consolidated Abstract Company, receipt of which is hereby acknowledged, and upon the further consideration that the within described tracts of land are conveyed subject to a total lien indebtedness aggregating $582,000.00 as evidenced by bonds secured by liens against said tracts of land as follows: 300 first mortgage bonds in the principal sum of $1,000.00 each, dated March 30, 1912, maturing March 30, 1932, secured by a deed of trust upon the first tract of land herein described to T. L. Camp, trustee, recorded in Book 223, page 11, of the Trust Deed Records of Dallas County, Texas; 250 first mortgage bonds in the principal sum of $1,000.00 each, dated March 30, 1912 maturing March 3, 1932 secured by a deed of trust upon the second tract of land herein described to T. L. Camp, Trustee, recorded in Vol. 223, page 19 of the Trust Deed Records of Dallas County, Texas; and a balance of 32 of a series of 450 second mortgage bonds in the principal sum of $1,000.00 each, dated April 1, 1912 maturing April 1, 1932 secured by deed of trust to T. L. Camp, Trustee, upon both of said tracts of land herein described,

recorded in Book 223, page 3, Trust Deed Records of Dallas County, Texas."

The granting clause of this deed describes the Main and Commerce street lots separately, denominating the Main street lot as first tract, and the Commerce street lot as second tract, after which it is stated that "said two tracts of land comprising 53x200 feet off of the West end of block No. 62 lying along the East line of Poydras Street between Commerce and Main Streets * * *." It contains a general warranty clause.

Each of the deeds from the Consolidated Abstract Company to appellants, after reciting the authority to convey said property, contains the following clause: "Therefore the Dallas Consolidated Abstract Company, a private · corporation duly incorporated and doing business under the laws of the State of Texas, acting herein through E. G. Trimble its President, pursuant to the foregoing resolution for and in consideration of the sum of $10.00 in cash and other valuable consideration to it in hand paid, receipt of which is hereby acknowledged, and the further consideration that this conveyance is made subject to a bonded indebtedness against the real estate herein described aggregating $582,000.00 and consisting of 300 first mortgage bonds in the principal sum of $1,000.00 each, dated March 30, 1912 and maturing March 30, 1932, secured by deed of trust upon the first tract of land herein described to T. L. Camp, Trustee, recorded in Vol. 223 p. 11 of the Deed Records of Dallas County, Texas, and 250 first mortgage bonds in the principal sum of $1,000.00 each, dated March 30, 1912 and maturing March 30, 1932, secured by a deed of trust upon the second tract of land herein described to T. L. Camp, Trustee, recorded in Vol. 223 p. 19 of the Deed Records of Dallas County, Texas, and a balance of 32 of a series of 450 second mortgage bonds in the principal sum of $1,000.00 each, dated April 1, 1912 and maturing April 1, 1932, secured by a deed of trust upon both tracts of land herein described to T. L. Camp, Trustee, recorded in Vol. 223 p. 3 of the Deed Records of Dallas County, Texas."

The property is described in these deeds as consisting of two tracts of land, each being separately described, and denominated first and second tracts. From this deed is omitted a description of the property as one block of land 53x200 feet, contained in the deed of the Western Indemnity Company. These deeds each contain a general warranty clause.

It is contended by appellants that the conveyance of the Western Indemnity Company to the Consolidated Abstract Company was merely a conveyance of grantor's equity in the property; that the abstract company did not assume payment of the pre-existing indebtedness against each lot, as shown by the three several deeds of trust above named, and

in no way changed the character or form of these liens, and in no way added to the pre-existing rights of any of the bondholders. They also contend that their deeds from the abstract company conclusively show that they only purchased the equity that the abstract company had in the property, in no way assumed the obligation of the pre-existing indebtedness, created no new rights in the bondholders, and left them in the precise condition they were in when the indebtedness evidenced by their bonds was created. This contention is presented to this court by proper assignments of error.

The major contention of appellees is succinctly shown by their fifth counter proposition, which is: "Where one party owns two contiguous tracts of ground, and simultaneously executes two deeds of trust on the separate tracts conveying to the same trustee, for the benefit of the bondholders, the two tracts 'together with the improvements erected thereon and that may hereafter be erected thereon—together with all and singular the rights and appurtenances thereto in anywise belonging', and thereafter such party erects and constructs on said two contiguous tracts of ground one structure, an office building, 12 stories high on one end and 7 stories high on the other, the 12-story end being on one of said contiguous tracts and the 7-story end on the other of said contiguous tracts, and which said building is entirely serviced with hallways, elevators, lights, water, stairs, and sewerage, from the 12-story end, the lien of the mortgage on the 7-story end extends to and covers the 12-story end of the building, and the land on which it is situated."

If the lien in favor of appellees, announced by the above proposition of law, was created by these conveyances against the Main street property, then, under the showing made on the receivership hearing, the court properly appointed a receiver for the entire property. If no such lien was created by the deeds of conveyances, then the court erroneously included the Main street property in the receivership. This states the question for the determination of this appeal. This question must be answered from the construction that must be placed on the deeds under which appellants hold the property. These deeds declare that the purchase "is made subject to a bonded indebtedness against the real estate (the Main and Commerce Street lots) herein described."

Was any new lien created in favor of the bondholders by appellants' deeds? The difference between a purchaser of land assuming the payment of a lien indebtedness thereon and in purchasing the land subject to such indebtedness is simply that, in the former case the purchaser becomes personally liable for the payment of the indebtedness, while in the latter case no such personal liability exists.

In both cases the indebtedness continues a burden on the land which constitutes the primary fund for the discharge of such indebtedness. However, a deed may contain a clause that the land is purchased subject to the lien indebtedness, but by the use of other language in the deed may evidence an intention on the part of the purchaser to become personally liable for such indebtedness.

In cases where a purchaser of land incumbered with a lien to pay an existing debt agrees to pay a particular sum as consideration for the purchase, but only actually pays to his vendor the difference between the sum named as the purchase price and the debt on the land, such purchaser assumes payment of the prior lien indebtedness, notwithstanding his deed recites that the land is purchased subject to such lien. Also, in cases where a purchaser of land agrees to pay as a part of the purchase price a debt that theretofore had not been a lien on the land, and deducts the amount of such debt from the sum named as consideration, such debt becomes a lien on the land purchased. In the former case, the purchaser having accepted a deed to land incumbered with a lien and having retained from the contract purchase price a sum sufficient to discharge such lien, the duty of discharging it rests upon him and he thereby makes himself personally liable for the lien indebtedness. In the latter case, the debt assumed being a part of the purchase price, as a matter of law, it became a lien on the land to secure its payment. Burton-Lingo Co. v. Standard et al. (Tex. Civ. App.) 217 S. W. 446.

Then again, if appellants' deeds of conveyance evidence a contract showing an intention to assume payment of the bonded indebtedness, then there is created a lien against the Main street lot in favor of the holders of the bonds originally secured only by the Commerce street lot, secondary of course to the liens originally created against the Main street lot; and likewise there is created a lien in favor of the holders of the bonds on the main street lot, a lien on the Commerce street lot, secondary to the original liens placed on such lot. This results because each appellant purchased the two lots by the same conveyance and in the same contract of purchase, and assumed the entire bonded indebtedness as a part of the purchase price of the entire land conveyed. Texas Land & Loan Co. v. Watkins L. & M. Co., 12 Tex. Civ. App. 603, 34 S. W. 996.

The record in this case excludes the existence of any of the above conditions, one of which must appear from the said deeds in order to create the lien contended for by appellees, in view of the fact that there is no express assumption by appellants of this indebtedness, and that the deeds recite that the purchase is made subject to the indebtedness. The deed of the Western Indemnity Company to the Consolidated Abstract Company, and the deeds from the Consolidated Abstract Company to appellants, exclude any contention that the grantee in either of said deeds assumed any personal liability in respect to the bonded indebtedness. Such deeds exclude any intention of the respective grantees to make the bonded indebtedness a charge on both lots, but clearly manifest the intention that the bonded indebtedness shall exist precisely as it stood when the bonds were issued and secured by the deeds of trust. In the deeds of appellants, the consideration is recited, as "$10.00 and other valuable consideration, the payment of which is acknowledged." It is true that this clause is followed by a recital of the effect that the lots are purchased for the further consideration that this conveyance is made subject to a bonded indebtedness against the real estate herein described, aggregating $582,000, and consisting of 300 first mortgage bonds in the principal sum of $1,000 each, secured by deed of trust on the Main street lot, and 250 first mortgage bonds in the sum of $1,000 each, secured by deed of trust on the Commerce street lot, and a balance of 32 bonds of the value of $1,000 each, secured by a deed of trust on both lots. This manifests a clear intention to leave the mortgage indebtedness just as it existed at the time it was created. The term "further consideration," used in connection with this clause of the deeds, has reference to the covenant of warranty contained in the deeds and gives notice that the incumbrances thus named are to be excluded from such covenants.

Both the deeds of trust executed to secure the bonds, as well as the bonds themselves, give the holders of the bonds a lien not only on the real estate described in the respective deeds of trust, but also on any improvement then existing on such real estate, or that may thereafter be placed thereon. There is no restriction in either the deed of trust or the bonds on the character of improvements that the grantor in the deed of trust may place on the land. In the instant case, the then owners of the two tracts chose to place one building on both lots; this such owner had a perfect right to do, but because of this fact he did not add to or substract from the lien held by the bondholders in reference to such improvements. That portion of the building on the Commerce street lot, together with all of the rights and appurtenances pertaining thereto, became subject only to the bonded indebtedness issued against such lot; and that portion of the building on the Main street lot, together with all of the rights and appurtenances pertaining thereto, became subject only to the bonded indebtedness issued against such lot. The fact that only one building was erected in no way affected the existing liens. This is clearly manifested by a clause contained in each deed of trust, to the effect that, under certain conditions of de-

fault, the trustee named could take charge of the property that secured the bonds in which the default was made and operate the improvement on such lot. To say that because of the erection of one building covering both lots, and because of default in the Commerce street bonds, the trustee and the receiver could take charge without notice to the holders of the Main street bonds and operate the entire building, would be an express violation of this right.

■ A suit for a receiver of property must either show some lien on the property sought to be thus impounded, or some other right in such property, before a court is authorized to appoint a receiver. Article 2293, R. C. S. 1925. Appellees have shown no lien against the Main street property and no other right therein, and hence have shown no right for a receiver for such property. It necessarily follows that, the judgment of the court, in so far as it includes the Main street lot and the improvements thereon in the receivership, is erroneous, and that the judgment must be reformed so as to exclude the Main street lot and its improvements from the receivership, but that the judgment must be affirmed as to the receivership of the Commerce street lot and its improvements. The matter of elevator, heat, light, water, and entrance service to the Commerce street lot should be accorded to the receiver as it now exists, and may be enforced by orders of the district court in which this suit is pending, and such court has authority to adjust any equities that may arise between appellants and the receiver in reference to such service.

Reformed as above indicated, and, as reformed, affirmed.